

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 8, 2008**                    **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| MICHAEL S. POLLY, | § | CASE NO. 08-41506-DML-7 |
| | § | |
| DEBTOR. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION**

Before the court is *RealPage, Inc.'s Motion to Reconsider* (the "Motion to Reconsider")

filed by RealPage, Inc. ("RealPage"), a party in interest.  Upon the request of the court, RealPage

and Debtor provided authorities respecting the Motion to Reconsider.  On July 28, 2008, the

court held a hearing (the "Hearing") on the Motion to Reconsider.  At the Hearing the court

heard arguments from RealPage and Debtor[1].

This matter is subject to the court's core jurisdiction. *See* 28 U.S.C. §§ 1334 and 157(b).

This memorandum opinion embodies the court's findings of fact and conclusions of law.  *See*

FED. R. BANKR. P. 9014 and 7052.

---

[1]    The chapter 13 standing trustee (the "Trustee") and Toyota Motor Credit Corporation also appeared at the
Hearing, and the Trustee argued in support of Debtor's position.

## I.      Background

On April 1, 2008, Debtor Michael Polly filed a petition under chapter 13 of the Bankruptcy Code (the "Code").[2]   RealPage filed its *Motion to Convert Debtor's Chapter 13 Case to Chapter 7* (the "Motion to Convert") on June 9, 2008.  RealPage asserts in the Motion to Convert that Debtor should be subject conversion to chapter 7 pursuant to Code section 1307(c) due to alleged acts of bad faith and for failure to file tax returns (*see* Code § 1308).  On July 9, 2008 Debtor filed a *Motion to Continue RealPage Inc.'s Motion to Convert* (the "Motion to Continue"), and RealPage responded with an objection to the Motion to Continue.  At a hearing on July 10, 2008, the court denied the Motion to Continue.

Following the denial of the Motion to Continue, the court took up the Motion to Convert. At that point, Debtor orally moved for dismissal of the case pursuant to section 1307(b) of the Code.[3]  The court granted the dismissal and signed an order dismissing the case with prejudice to refiling for 180 days.  On July 17, 2008, RealPage filed the Motion to Reconsider alleging the court erred in granting the order dismissing the case.[4]   After the court set the Motion to Reconsider for hearing, Debtor filed *Michael S. Polly's Response Opposed to RealPage, Inc.'s Motion to Reconsider* (the "Response") on July 24, 2008.

---

[2]      11 U.S.C. §§ 101 *et seq.* (2008).

[3]      As provided for in Federal Rule of Bankruptcy Procedure 9013, applicable pursuant to Federal Rule of Bankruptcy Procedure 1017(f)(2), the court accepted Debtor's oral motion.  *Cf. Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616 (2d Cir. 1999).

[4]      Because Debtor surprised RealPage and the court with his request for dismissal and RealPage had no meaningful opportunity to present reasons why dismissal should be denied, the court considers it appropriate in the context of the Motion to Reconsider to address the merits of RealPage's arguments.

## II. Issue

The issue before the court is whether, once a motion to convert a case from chapter 13 to chapter 7 has been filed under section 1307(c)[5] of the Code, the debtor has an absolute right to dismiss the chapter 13 case under section 1307(b) of the Code. While this court does not find in the interaction of these subsections of section 1307 an issue unresolvable through application of the central, plain meaning rule of statutory construction, a substantial minority of courts have found the issue more complex and have insisted that reconciling the subparts requires more than simply responding to the apparently mandatory language of section 1307(b).

## III. Discussion

### A.     The Plain Meaning Doctrine

When addressing the language of the Code, the Supreme Court has opined that the "plain meaning of [the] legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see also In re Reed*, 405 F.3d 338, 343 (5th Cir. 2005).

Similarly the Supreme Court in *Lamie v. United States Trustee* reasoned: "We should prefer the plain meaning [of the statute] since that approach respects the words of Congress. In this manner we avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history." *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004). In *Lamie*, the Court set a

---

[5]     In the Motion to Convert RealPage relied on section 1307(c) but during the Hearing additionally cited section 1307(e) which provides for conversion or dismissal for failure to file tax returns as required by Code § 1308. The court reaches the same result whether conversion is sought under section 1307(c) or 1307(e). Because other opinions addressing the issue before the court do so in terms of section 1307(c), this court does so as well.

high standard for all claims of ambiguity regarding a statute and further reasoned that although a sentence may be awkward, it still must be interpreted in accordance with its plain meaning so long as its meaning is straight forward and adopting the plain meaning does not lead to an absurd result. *Id*. at 534-35.

Debtor maintains that the plain meaning of section 1307(b) of the Code is that a debtor has an absolute right to dismiss his or her chapter 13 proceeding. Debtor avers in the Response that "[t]he statutes' [sic] language unequivocally and unconditionally demonstrates that Mr. Polly has an absolute right to dismissal." Response ¶ 12(a).

Section 1307(b) of the Code states that:

> On the request of the debtor *at any time*, if the case has not been converted under section 706, 1112, or 1208 of this title, the court *shall* dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1307(b) (emphasis added).

The court does not find any ambiguity in the instruction given to it by Congress in section 1307(b). As the Supreme Court has stated, "the mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershard Hynes & Lerach*, 523 U.S. 26, 35 (1998) (cited in *Miller v. French*, 530 U.S. 327, 337 (2000)). Black's Law Dictionary defines "shall" to mean "[h]as a duty to; more broadly, is required to." BLACK'S LAW DICTIONARY 1379 (7th ed. 1999). Thus, the word "shall" is used in section 1307(b) to require action by the court, or in this case to mean that the court *has a duty to* dismiss a chapter 13 case upon the request of the Debtor.

The court similarly sees no ambiguity in the words "at any time." There is no question that Congress knew how to regulate the timing of when a debtor or another party has a right to act. The Code is replete with provisions like section 1121(b), giving a chapter 11 debtor a

limited exclusive right to file a plan, which condition a party's right to act upon the timing of the action. In a number of contexts Congress has imposed timing restraints based on the absence of intervening conduct of other parties. Under section 366(b) and (c) a utility may freely terminate services to a debtor (or trustee) after the initial waiting period unless during that period the debtor (or trustee) has provided the utility with adequate assurance of future payment. In a construct suggestive of what Congress might have provided had it intended in section 1307(b) what RealPage argues, Federal Rule of Bankruptcy Procedure 3006 provides that a creditor may withdraw a proof of claim as a matter of right unless the claim has been objected to, or the creditor has been subjected to an adversary complaint. Analogously, had Congress wished to limit a debtor's right to dismiss under section 1307(b) if a motion to convert intervened, it would have said so, conditioning the words "at any time" on no such motion having been filed.[6] Absent such language, the court finds no warrant for restricting the plain meaning of "at any time."

Likewise, application of section 1307(b) in accordance with its plain meaning does not lead to an absurd result or one "demonstrably at odds" with congressional intent. Chapters 12 and 13 were intended by Congress to be purely voluntary. *See, e.g., Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 252 (4th Cir. 2007); *In re Barbieri*, 199 F.3d at 620 (citing *In re Harper-Elder*, 184 B.R. 403, 408 (Bankr. D.D.C. 1995)). Many sections of the Code reflect this intent. *See, e.g.,* 11 U.S.C. §§ 303(a), 706(c)[7] and 1112(d). Notably, chapters 7 and 11, not meant by

---

[6]    Indeed Congress *did* condition the right to dismiss on the case not having been previously converted.

[7]    Section 706(c) was amended slightly by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to allow a debtor to consent to conversion to chapter 13. While focusing, therefore, on the voluntary nature of chapter 13, Congress did not elect to change the apparently absolute right to dismissal provided by section 1307(b) (though BAPCPA amended section 1307 in other respects). This is especially significant given the changes made by BAPCPA for individual chapter 11 debtors, who, unlike

Congress to be limited to the volunteer debtor, contain no provision similar to section 1307(b). *See* Code §§ 707 and 1112. It is entirely consistent with congressional purpose, and not the least absurd, to construe section 1307(b) to give a chapter 13 debtor the right to dismiss his or her case at any time and regardless of what other parties elect to do.[8]

It is clear that the language used in section 1307(b) of the Code cannot be considered ambiguous or "demonstrably at odds" with the legislative intent of section 1307(b). Applying the section literally does not lead to an absurd result. Following the Supreme Court's directions respecting the reading of statutory provisions, it is consequently appropriate to adopt the plain meaning of section 1307(b) of the Code, which requires this court to dismiss the chapter 13 case at the request of Debtor.

## B.     Legislative History

Besides the plain meaning of section 1307(b) of the Code being clear enough to be dispositive, looking to the legislative history of the provision also supports the court's reading of the statute. Thus, the legislative history indicates Congress intended a debtor to retain an absolute right to dismiss under section 1307(b) of the Code. As stated in the relevant House Report, "[s]ubsection (b) requires the court, on request of the Debtor, to dismiss the case if the case has not already been converted from Chapter 7 or 11." H.R. REP. No. 95-598, at 428 (1977). The Senate Report is the same: section 1307(b) confirms "without qualification, the rights of a

---

potential chapter 12 or 13 debtors, now may be involuntarily forced to commit future earnings to their creditors. *See* Code §§ 303(a) and 1115.

BAPCPA is generally thought, as suggested by its title, to represent an effort by Congress to close loopholes in the Code that benefitted the dishonest debtor. Surely given the extensive judicial gloss on section 1307(b), Congress would have modified that provision if it thought it was subject to abuse through its natural reading.

[8]     In fact, reading section 1307 as would RealPage, would give parties in interest a wild-card right to defeat operation of section 1307(b) by filing and leaving to pend a motion to convert.

Chapter 13 debtor to . . . have the Chapter 13 case dismissed." S. REP. NO. 95-598, at 141 (1978). The latter language – that a debtor's right to dismiss is "without qualification" – is a forceful indicator of the congressional purpose that chapter 13 be purely voluntary.

## C.     Case Law and Commentary

### 1.  Majority View

Most courts that have considered the question have adopted the same plain meaning approach as this court and concluded that section 1307(b) (and its identical cognate, section 1208(b)[9]) provide a debtor with an absolute right to dismiss his or her case notwithstanding a pending motion to convert. *See, e.g., Barbieri*, 199 F.3d at 616; *Beatty v. Traub* (*In re Beatty*) 162 B.R. 853 (B.A.P. 9th Cir. 1994), *In re Patton*, 209 B.R. 98 (Bankr. E.D. Tenn. 1997); *In re Campbell*, No. 07-457, 2007 WL 4553596 (Bankr. N.D. W. Va. Dec. 18, 2007); *In re Harper-Elder*, 184 B.R. at 403; *In re Merrett*, 39 B.R. 462, (Bankr. E.D. Pa. 1984); *In re Gillion*, 36 B.R. 901 (E.D. Ark. 1983). This view is also shared by the leading commentator. Collier on Bankruptcy states:

> In a case originally commenced under chapter 13, as distinguished from a case converted to chapter 13 from chapter 7, chapter 11 or chapter 12, the debtor is entitled, as a matter of right, to obtain a dismissal of the chapter 13 case at any time.

8 COLLIER ON BANKRUPTCY ¶ 1307.03 (15th ed. rev. 2007). Collier cites with disapproval those cases that restrict the debtor's absolute right to dismiss to cases in which no motion to convert is pending. *Id.*; *but see* 7 NORTON ON BANKRUPTCY § 148.4 (3d ed. 2008) (providing a more equivocal discussion of section 1307(b)).

---

[9]     Like chapter 13, chapter 12 may only be commenced voluntarily. *Cf.* Code § 303(a). As the pertinent language of the applicable provisions of sections 1208 and 1307 are virtually identical, the court considers law under either chapter relevant to its analysis. *See In re Fonke*, 310 B.R. 809, 813 (Bankr. S.D. Tex. 2004).

## 2. The Minority View

Although only a minority of courts conclude that, in the face of a motion to convert under section 1307(c), the right of a debtor to dismiss under section 1307(b) is not absolute, courts in the Fifth Circuit have almost uniformly adopted this view. *See In re Foster*, 945 F.2d 400 (5th Cir. 1991), aff'g without op. *Foster v. N. Tex. Prod. Credit Ass'n (In re Foster)*, 121 B.R. 961 (N.D. Tex. 1990); *In re Cobb*, No. 99-3193, 2000 WL 17840 (E.D. La. 2000); *In re Jacobsen*, 378 B.R. 805 (Bankr. E.D. Tex. 2007); *In re Fonke*, 310 B.R. at 809; *In re Crowell*, 292 B.R. 541 (Bankr. E.D. Tex. 2002).[10] While the Court of Appeals for the Fifth Circuit has not spoken to this issue in a published opinion, on at least one occasion it has declined the opportunity to do so (*see In re Foster*, 945 F.2d at 400). Those district courts in the Fifth Circuit that have considered section 1208(b) or section 1307(b) (including the District Court for the Northern District of Texas, construing section 1208(b) in *Foster*) have concluded that the bankruptcy court has discretion to decline to dismiss a case upon a request by the debtor, at least if a motion to convert the case is pending. *See In re Foster*, 121 B.R. at 961; *In re Crowell*, 292 B.R. at 543; *In re Cobb*, 2000 WL 17840, at * 3.

Because this court is especially concerned about consistency in the jurisprudence of this circuit, it is important to explain why it would now depart from a line of cases decided by many different courts and covering more than twenty years. The court therefore addresses below the principal arguments offered by the minority courts for ignoring what appears, facially at least, to be Congress's command that the court *must* grant a debtor's request, made at any time, that his or her case be dismissed.

---

[10] The court understands that the Hon. Russell F. Nelms ruled in *In re Rivera*, Case No. 07-43678-RFN-13 (Bankr. N.D. Tex. filed Aug. 29, 2007), that section 1307(b) mandates dismissal upon request. *See* Orders entered March 4, 2008. Judge Nelms' decision, however, is not memorialized in a written opinion.

The bases for denying a motion to dismiss filed by a debtor under section 1307(b) include: (1) because section 1307(b) uses the operative word "request," the court must have discretion to dismiss or not; (2) if section 1307(b) gives a debtor the absolute right to dismiss, section 1307(c) is rendered a nullity, since a debtor could always avoid conversion, regardless of creditor interests, by the simple expedient of invoking his or her dismissal right; and (3) an absolute right to dismiss would afford the dishonest debtor a revolving door allowing him or her to enter and exit bankruptcy at will, so abusing the process and frustrating the administration of justice.

Additionally, one court has focused on the language of section 1307(c) that "[e]xcept as provided in subsection (e) of this section . . . the court may convert a case under this chapter." In that language the court found an indication that Congress did not intend to limit the court's discretion once a conversion motion is filed to cases in which dismissal under section 1307(b) is not then sought: specifically including section 1307(e) as a limitation implies section 1307(b) does not constitute a limitation on the court's entertaining a conversion motion under section 1307(c). *See In re Jacobsen*, 378 B.R. at 810. This argument, however, seems to depend on the present language of section 1307(e), which deals with dismissal or conversion for failure to file tax returns. When section 1307 was amended by BAPCPA to add that provision between subsection (d) and former subsection (e), Congress did not change the reference in section 1307(c) from subsection (e) to subsection (f) to conform to the change. Before BAPCPA, the limitation in section 1307(c) referred to what is now section 1307(f), which bars a court from converting a chapter 13 case to a chapter for which the debtor is not eligible. As this is qualitatively a very different sort of limitation from that which section 1307(b) (or present

section 1307(e)) may impose, the court does not consider it germane in construing the interaction of subsections (b) and (c).

a. "Request"

A number of courts focus on the requirement of section 1307(b) that the debtor "request" dismissal of his or her case in opining that dismissal is not mandatory. *See, e.g., Graven v. Fink (In re Graven)*, 936 F.2d 378, 386 (8th Cir. 1991); *In re Fonke*, 310 B.R. at 814; *In re Tatsis*, 72 B.R. 908, 910 (Bankr. W.D.N.C. 1987). Besides the supplicatory tone inherent in the word "request,"[11] courts point to section 1307(a),[12] *In re Fonke*, 310 B.R. at 814, *In re Graven*, 936 F.2d at 386, and Federal Rule of Bankruptcy Procedure 1017(f)(2) and (3)[13] as evidence that the debtor does not have an absolute right under section 1307(b) to dismiss a case. The argument based on these provisions is that section 1307(b) and Rule 1017(f)(2), unlike section 1307(a) and its counterpart, Rule 1017(f)(3), require court action for dismissal. Thus, while conversion may

---

[11]     *See* WEBSTER'S UNABRIDGED DICTIONARY 1929 (3d ed. 1976). The court is not inclined to put much weight on the common sense of the word "request." "Petition" is a word equally fraught with a sense of begging, not demanding. *See id*. at 1690. Yet no one would contend that a court might deny the order for relief provided to a voluntary petitioner by Code § 301.

[12]     Section 1307(a) states:

        (a)  The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

     11 U.S.C. § 1307(a).

[13]     Rule 1017(f)(2) and (3) state:

        (2)          Conversion or dismissal under §§ 706(a), 1112(a), 1208(b), or 1307(b) shall be on motion filed and served as required by Rule 9013.

        (3)          A chapter 12 or chapter 13 case shall be converted without court order when the debtor files a notice of conversion under §§ 1208(a) or 1307(a). The clerk shall promptly transmit a copy of the notice to the United States trustee.

     FED. R. BANKR. P. 1017(f)(2) and (3).

Page 10

occur automatically upon the giving of notice by the debtor,[14] dismissal requires the filing of a motion and further court action, clearly suggesting the court has discretion whether to grant the requested relief in the latter, but not in the former, circumstances.

This argument, however, overlooks the differences between dismissal and conversion. In the event of conversion, the debtor's case continues; only the direction and substance of the proceedings change. The court retains jurisdiction over the debtor and the debtor's estate, and the court can readdress if it deems necessary any of the consequences that may necessarily result from the change in the nature of the proceedings.

Effecting dismissal, on the other hand, eliminates the court's jurisdiction over the debtor. *See Bass v. Denny* (*In re Bass*), 171 F.3d 1016, 1025 (5th Cir. 1999); *In re Statistical Tabulating Corp., Inc.*, 60 F.3d 1286, 1291-92 (7th Cir. 1995); *Porges v. Gruntal & Co. Inc.* (*In re Porges*), 44 F.3d 159, 162 (2d Cir. 1995). *In re Morris*, 950 F.2d 1531, 1538 (11th Cir. 1992); *Smith v. Commercial Banking Corp.* (*In re Smith*), 866 F.2d 576, 580 (3d Cir. 1989). Absent an order providing otherwise, unlike the situation following a conversion, the court's control of the estate is also lost. *See* Code § 349(b)(3). Indeed, the need for the court to have an opportunity to condition dismissal – as well as the need for a formal divestiture of its jurisdiction – requires that the court not learn of the debtor's request from the filing of a notice which itself, untested, must eliminate the very authority the court is charged to exercise. The fact that the court must order an end to a chapter 13 case – just as it is commenced by an automatic order for relief – does not mean that, as well as conditioning dismissal, it may, contrary to the command of the statute, deny it.

---

[14]     The validity of this conclusion since *Marrama v. Citizens Bank of Massachusetts* (*In re Marrama*), 127 S. Ct. 1105 (2007), is questionable. In *Marrama*, in fact, the notice of conversion under Rule 1017(f)(3) was treated as a motion to convert. *Marrama*, 127 S. Ct. at 1108.

b.  Section 1307(c)

Some courts insist that reading section 1307(b) to give a debtor an unfettered right to dismiss his or her case would render section 1307(c) a nullity.  *See, e.g., In re Molitor*, 76 F.3d 218, 220 (8th Cir. 1996); *In re Cobb*, 2000 WL 17840, at *3; *In re Gaudet*, 132 B.R. 670, 676 (Bankr. D.R.I. 1991).   These courts reason that, in such circumstances, any motion by a party in interest to convert under section 1307(c) would be met by the debtor's invocation of his or her right to dismiss under section 1307(b).  *See, e.g., In re Molitor*, 76 F.3d at 220; *In re Cowper*, 266 B.R. 669, 670 (Bankr. W.D. Mich. 2001); *In re Howard*, 179 B.R. 7, 9 (Bankr. D. N.H. 1995).   These courts maintain that by interpreting section 1307(b) as mandating dismissal, section 1307(c) would be rendered useless, something Congress surely did not intend.

This assumes, however, that the debtor neither truly wants nor needs bankruptcy relief. Not every debtor will choose dismissal, particularly given its potential consequences discussed below, over resisting or even acceding to conversion.  Many – perhaps most – debtors will prefer to stand and fight rather than retreat from the courthouse under cover of section 1307(b).  *See, e.g., In re Campbell*, 2007 WL 4553596, at *4.

The error of the cases reasoning that section 1307(b), if mandatory, would vitiate subsection (c), is that they confuse the relief provided to debtors by bankruptcy law – a discharge – with the exercise of the bankruptcy court's jurisdiction.  In a recent case arising under section 707(b) of the Code, the Court of Appeals for the Fifth Circuit had occasion to note that it is the *discharge* in bankruptcy that constitutes the relief sought by a debtor, not the original order for relief by which jurisdiction attaches.  *See Cortez v. U.S. Trustee* (*In re Cortez*), 457 F.3d 448, 455 (5th Cir. 2006).  It is the relief – the *discharge* – afforded by a bankruptcy proceeding that

Congress intended to benefit the honest – as opposed to the miscreant – debtor. *See Marrama*, 127 S. Ct. at 1107 (citing *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).

Courts troubled by the arguable conflict between sections 1307(b) and 1307(c) often are really simply viewing from a different angle the next issue to be addressed: how to prevent the dishonest bankruptcy filer from gaming the system. As discussed below, a bankruptcy court has numerous tools for controlling the debtor who would abuse the system. Abrogating Congress's clear command in section 1307(b) is not necessary to the court's protection of itself or its process.

c. Debtor Misconduct

Almost all the courts that would limit the debtor's ability to dismiss under Code § 1307(b) cite the need for protecting the court, the process and the creditors against the dishonest debtor. *See, e.g., In re Molitor*, 76 F.3d at 221; *In re Fonke*, 310 B.R. at 813.[15] It is the view of these courts that, if a dishonest debtor can head off an effort at conversion under section 1307(c) through use of section 1307(b), the result will be abuse of the system. *See, e.g., Molitor*, 76 F.3d at 221 ("[Debtor's] actions constitute a clear abuse of the legal process set forth in the [Code] to aid and assist honest debtors."); *In re Foster*, 121 B.R. at 961 (construing section 1208(b)) ("When the facts show that the debtors have abused the legal process and the bankruptcy process through fraud, the bankruptcy court has the authority to convert a . . . proceeding . . . , even though the debtors have filed a motion to dismiss . . . ."); *In re Fonke*, 310 B.R. at 813 ("The concern . . . is that an absolute right to dismiss in face of allegations of fraud and bad faith will encourage abuse of the bankruptcy systems by dishonest individuals who are misusing the

---

[15]     *In Cotton v. BankSouth, N.A. (In re Cotton)*, 992 F.2d 311, 312 (11th Cir. 1993), the Court held that section 1208(b) gives a right to immediate dismissal if "the debtor has not engaged in fraud that would make immediate dismissal unjust." The Court goes to note that *Cotton* involved "no evidence . . . of fraud that would justify converting this proceeding to an involuntary bankruptcy." *Id.* at 313, distinguishing *In re Graven*.

system."); *In re Johnson*, 228 B.R. 663, 668 (Bankr N.D. Ill. 1999) ("Debtor has been shown to have filed in bad faith and abused the Bankruptcy Code, thus warranting conversion to Chapter 7 instead of dismissal.").

Section 1307(c), however, is not the only possible protection against the ill-motivated debtor. Section 349 of the Code[16] provides considerable latitude to the court in conditioning dismissal of a case under section 1307(b). Thus, the court may dismiss with prejudice to refiling (as was done in the case at bar) to prevent a revolving door approach to bankruptcy. *See, e.g.*, *In re Barbieri*, 199 F.3d at 621; *In re Graffy*, 216 B.R. 888, 891-92 (Bankr. M.D. Fla. 1998); *In re Greenberg*, 200 B.R. 763, 770 (Bankr. S.D.N.Y. 1996). Section 349(b)(3) allows the court to exercise continuing control over property of the estate if that is necessary to protect parties against the debtor's post-dismissal conduct. Some courts have even delayed dismissal of a case

---

[16]     Section 349 provides:

>  (a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

>  (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title--

>    (1) reinstates--

>  (A) any proceeding or custodianship superseded under section 543 of this title;

>  (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

>  (C) any lien voided under section 506(d) of this title;

>  (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

>  (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349.

under section 1307(b) (or section 1208(b)) to ensure against debtor abuse. *See In re Goza*, 142 B.R. 766, 771 (Bankr. S.D. Miss. 1992) (chapter 12 case); *In re Tyndall*, 97 B.R. 266, 268 (Bankr. E.D.N.C. 1989). While this court is not willing at this point and in the present context to opine that jurisdiction can be long retained over an unwilling chapter 12 or 13 debtor, use of the device illustrates the power of the court to protect itself.[17]

Nor does dismissal necessarily relieve a debtor of the consequences of his or her misconduct. Federal Rule of Bankruptcy Procedure 9011 gives the court power to sanction certain abusive practices, and use of that rule may be reserved by the court following dismissal. *See, e.g., In re Smith*, 257 B.R. 344, 352 (Bankr. N.D. Ala. 2001). Finally, that a case is dismissed does not excuse commission of an offense under chapter 9 of Title 18 of the United States Code. *See, e.g., In re Barbieri*, 199 F.3d at 621-22. Thus, even after a dismissal a debtor may be held to account for his or her wrongdoing.

Of particular concern to some courts has been use by a debtor of chapter 13 to obtain the benefits of the automatic stay of Code § 362(a). *See, e.g., In re Cobb*, 2000 WL 17840, at *3 (citing *In re Molitor*, 76 F.3d at 220, and *In re Powers*, 48 B.R. 120, 121 (Bankr. M.D. La. 1985)). These cases adopt the view that, having obtained the temporary relief afforded by the stay, a debtor should not be allowed to escape from bankruptcy against the will – and contrary to the best interests of – his or her creditors. The stay, however, provides no more than delay for a debtor unless it matures into a discharge. Further, section 362 provides mechanisms for quick relief from the stay. *See* 11 U.S.C. § 362(d), (e) and (f). To the extent the temporary effect of

---

[17] The use of delay obviously could not be to permit pursuit to its conclusion of a hearing on a motion filed under section 1307(c). However, delaying dismissal to ensure compliance with orders entered and consummation of relief afforded prior to the filing of a dismissal motion would not seem inconsistent with the intent of section 1307(b) or an abusive retention of the court's jurisdiction. Such a prophylactic approach to dismissal appears clearly contemplated in section 349. *Cf. In re Cotton*, 992 F.2d at 313.

Page 15

the stay together with dismissal under section 1307(b) could be used tactically to the prejudice and detriment of other parties, section 349 of the Code affords the court ample latitude to protect those parties or return them to where they were when the bankruptcy case was filed. In short, the case of the undeserving debtor does not require that section 1307(c) be held to trump the plain meaning of section 1307(b).

    3. *Marrama*

    RealPage relies heavily on the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*[18] for the proposition that this court may overlook the apparently plain command of section 1307(b). But *Marrama* does not support RealPage's argument, and, indeed, a review of the Court's reasoning suggests this court's construction of the statute is correct.

    First, section 706(a), the provision of the Code at issue in *Marrama*, provides that a "debtor *may* convert a case under [chapter 7] to a case under chapter 13 . . . at any time . . . ." (emphasis added). 11 U.S.C. § 706(a); *see also Marrama*, 127 S. Ct. at 1109. Section 1307(b), on the other hand, as noted above, provides that "the court *shall* dismiss a case" on request of the debtor. 11 U.S.C. § 1307(b). This direction to the court is explicit and unlike the permissive option afforded the debtor in section 706(a).

    Second, in *Marrama* the question was whether the bankruptcy court could short-circuit a two-step process by which a debtor converting from chapter 7 to chapter 13 would then have his case subject to reconversion pursuant to section 1307(c). *See Marrama*, 127 S. Ct. at 1108 (referring to insistence upon a two-step process as a "procedural anomaly"). In short-circuiting

---

[18]    In *Marrama* the Court determined that a debtor did not have an absolute right to convert his chapter 7 bankruptcy case to a chapter 13 proceeding under section 706(a) of the Code when implications of bad faith actions on the part of the debtor were apparent. The court reasoned that "the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." *Marrama*, 127 S. Ct. at 1112.

this process by denying conversion in the first place, the bankruptcy court would apply the same standard – in *Marrama*, bad faith (*see id.* at 1112 n.11) – as it would in deciding a motion to reconvert under section 1307(c). In the case of dismissal under section 1307(b), however, the standard that the court would apply in addressing a petition by creditors to institute new proceedings – that applicable under Code § 303 respecting involuntary cases – is quite different than the tests for conversion under section 1307. *See, e.g., In re Harper-Elder*, 184 B.R. at 408. Thus, the effect of not honoring the mandate of section 1307(b) is quite different from denying conversion under section 706(a). Whereas conversion is simply a change in the direction of a case, dismissal marks the proceeding's end and requires a new beginning and the concomitant steps necessary to invoking the court's jurisdiction.

Third, *Marrama* focuses on the relief sought by a debtor. Dismissal equates to a forfeit of the relief available from the bankruptcy court. In *Marrama* the Court was concerned about abuse of the process by a debtor who continues to seek the relief provided by the Code, albeit under another chapter. *Marrama*, 127 S. Ct. at 1109-11. That concern does not exist where dismissal is the end result as opposed to conversion.

Fourth, in *Marrama* the Court focused on section 706(d), which provides that a case may not be converted to a chapter for which the debtor is not eligible. The Court reasoned that a debtor whose chapter 13 case would be dismissed for bad faith does not qualify for relief under chapter 13 in the first place and so, by reason of section 706(d), may be denied conversion to that chapter. *Id.* In the case of dismissal there is no question of qualifying for the relief provided by any chapter of the Code.

Finally, there is the overriding importance of the voluntary nature of chapter 13. As noted above, Congress carefully drafted the Code to ensure that chapter 13 could only be entered

into and continued by a debtor voluntarily.   The Supreme Court has commented on the significance of the voluntary nature of chapter 13 in relation to avoiding the possibility of involuntary servitude.  *See Toibb v. Radloff*, 501 U.S. 157, 165-66 (1991).[19]  In *Marrama*, the debtor was seeking to enter, not exit, those purely voluntary precincts.  The Court's decision simply denied the debtor that option.  Denying a debtor the ability to take advantage of a type of proceeding which may be commenced only voluntarily is a very different thing from denying a debtor the right to terminate such a purely voluntary proceeding.  *Marrama* does not therefore support the proposition that the debtor who has voluntarily commenced a chapter 13 case does not have the absolute right to dismiss it.

    For all these reasons, this court is not persuaded that *Marrama* provides license to ignore the express command of section 1307(b).  Indeed, the opinion in *Marrama* is wholly consistent with application of section 1307(b) in accordance with its plain meaning.

---

[19]    In BAPCPA Congress modified chapter 11 to include provisions comparable to the parts of chapter 13 of concern to the Court in *Toibb*.  *See* Code §§ 1115, 1123(a)(8) and 1129(a)(15).  As a chapter 11 case may be commenced against an individual involuntarily (*see* Code § 303(a)) this may signal a change in congressional views respecting the necessity that a proceeding by which a debtor's earnings are committed to creditors must be voluntary.

Page 18

## IV. Conclusion

Based on a review of the Code, relevant legislative history, the policies underlying chapter 13 and the case law, the court holds that section 1307(b) provides a chapter 13 debtor with an absolute right to dismiss his or her case at any time, even if a motion to convert the case to a chapter 7 is pending. Accordingly the Motion to Reconsider must be DENIED.

It is so ORDERED.

### END OF MEMORANDUM OPINION ###